We will hear argument next in Case 12-43, PPL Corporation and Subsidiaries v. Commissioner of Internal Revenue. Mr. Clement. Mr. Chief Justice, and may it please the Court, this case has its origins in a decision by the British government in the major Thatcher years to privatize a number of previously State-owned utilities. The government's plan was to keep prices constant and allow the companies to make profits by increasing efficiencies and reducing costs. Only after an initial period in which prices would be fixed would the prices be rejiggered and then savings passed on to the consumers. Now, this in practice worked very well for the companies. They were able to increase their efficiencies and cut costs to a greater extent than people expected. This was not, however, greeted as a uniform success. Instead, the opposition party criticized this and said that the fat cats at the utility companies had earned too much and the conservative government had made a mistake by valuing the shares at IPO too cheaply. And so they promised, as an express election promise, to impose a tax on the excess profits of privatized utilities. And when elected, they made good on that promise and passed Windfall Act. Sotomayor See, I have a problem with this argument, because it assumes a way of looking at this, but it's an assumption. You can look at it in either way. You can look at it as they made too much money, we want a part of that profit, or they paid too little for what they got. And that was the debate going on in Congress. Did they pay too little on the flotation value or did they make too much money? And what the government says, rightly, is whether you pay too much or too little money depends on the value of the company. And one of the factors that goes into that is how much money has the company made. And so you always have to look at profits to some extent. So what's wrong with looking at it their way? Why does it have to be your way? Well, it has to be my way because of the way the specific tax was designed. No, you can only do it your way if you do what the amici says, which is to take out from your simplified equation the fact that the time, the D element of your equation is constant. You artificially freeze it, the time at which they operated. Only by freezing that number can you come out with your equation. Well, Your Honor, we're not artificially freezing the number. The number, the D, which is 1461 for almost every company, is itself part of the statute because they picked a period by which they were going to measure the profit in value-making. Sotomayor But there was at least two or three companies that had a very different period, and they paid a huge amount, much further than their gross profits. Well, I can talk about the outlying companies. They paid a different effective rate because the D was different. But there's two important things to remember. One, I believe it's common ground between the parties that the way you applied this regulation is to look at the tax in, to use the regulatory phrase, in the normal circumstances in which it applies. So I believe it's common ground that you ignore the outliers anyway. Sotomayor But you change the other part of the equation or of the tax regulation which says it has to be true for all taxpayers. No. So that particular provision, think of it as like a Clark v. Martinez principle for taxes. They either are creditable or they're not. That's what that principle has been interpreted to. The case you should look at, if you're really interested in it, is the Exxon case, the tax court. We cite it in both our briefs. And there it was a situation where, again, a British excess profits tax. In the main, it was an excess profits tax on the companies that were developing the North Sea oil field. But as the tax applied to a couple of companies that really hadn't gotten any oil out, it applied very differently. And the tax court and the government in that case both conceded, no, you look at the tax in its main applications. And in those main applications, everyone concedes that this tax operates exactly like a 51.75 percent tax on profits above a threshold, a threshold of four-ninths of the flotation value. And that is not an accident. That's not some kind of tricky math thing that somebody pulled up. It's right there in the statute itself.  behind it, that's the purpose of this statute. And so the purpose of this statute is to compensate the government for having valued the shares at too low a price. And this was stated right in the enactment. Would that change your argument? It wouldn't, Justice Kennedy, because at the end of the day, it's the substance of the tax, not its purpose behind it, that matters. Now, I do think in this case, as Justice Sotomayor alluded to, everybody in this process really understood that those were just the flip side of the same coin. You can talk about the profits being too high vis-a-vis flotation. You can talk about flotation being too low vis-a-vis the subsequently reported profits. But what makes the difference is that this is not a tax on profits, it's a tax on profits and a tax on low value. Then what do we do? Well, in this particular case, you would say it's creditable because the only measure of value here is by looking at retrospective earnings over a 4-year period. And the best hypothetical I can give you is think about a foreign government that says we want to tax the value of corporations, but the way we are idiosyncratically going to measure value is to look at their earnings over the past year. Now, I would hope that tax would be for U.S. substantive economic tax purposes fully creditable. Of course, it's a tax on income by our odds. Now, in saying that, you're not suggesting that the other company — the other country did something wrong or that's not value in their conception. But the whole point that this Court made clear in the Biddle case going back 75 years ago is when you're looking at foreign taxes for purposes of applying the foreign tax credit, you don't take the foreign characterizations, the foreign classifications as a given. You look at the substance of the tax for our purposes. And if you look — if you apply that mechanism to this tax, this tax looks exactly like a U.S. excess profits tax. It is really —  Mr. Clemenza, if you say — Kennedy. Suppose it's a one — if I could just — suppose if we say this is a one-time tax in order to recalculate, reassess the value. If it's on income, it's still an excess profits tax in your view. Yes. And, of course, you could have had a one-time, one-off tax, to use the British phrase, and you could have taxed the difference between the value at flotation and, let's say, the London Stock Exchange price at some later point. And that would have been a normal estimate of value and it would not have been credible for a number of reasons. But when you do what this tax uniquely did, which is you don't look at a normal rubric of value, but you look at a construct. I mean, the very fact that they had to use the phrase value in profit-making terms tells you something weird is going on here. I mean, if they were really — Ginsburg. Mr. Clement, is there another example? Justice Kennedy mentioned that this was what they call one-off. It's one-time only and it's retrospective. Is there any instance in which a foreign tax credit has been given to something that looks like this, a one-time only adjustment that is — that operates retrospectively on past earnings? Justice Ginsburg, I can't put all the pieces of that together and say there's one case that had all of these various features and then it was still creditable, but I don't think that matters. It's very clear, I think, for starters, that the fact that this is a retroactive tax is not this positive. You look at one of the regulatory requirements and that's realization. And that treats an estimate of future income generation very differently, because that doesn't involve a realization event. But what the regulation says is that the tax has to be imposed upon or subsequent to. Sotomayor, my fear is, as warned by the government and the tax professors, that the rule you want us to announce to help you win is to say any time a tax uses estimates of profits, no matter how it does it, it is credible, creditable. That's the rule you want. No, it is not. It is emphatically not. And let me tell you why there is no slippery slope here. First, the big thing they want to tell you is this is a normal way of valuation and if you allow this, then any valuation is going to be creditable. That is flat wrong. And the reason that's flat wrong is because almost every effort in valuation is prospective. If you want to try to value a piece of property, you could value it by saying, well, what kind of rents can I get on this property and I'll discount them back to net present value. And I suppose you could conceive of a property tax as a tax on a percentage of those projected future earnings. But you know what? Easily, obviously not creditable, because the first requirement on the regulation is that there be a realization event. And when you're talking about projected future income streams, there's no realization  So all of those are off limits. Sotomayor, so why is it bad to say I want to find the original flotation value and instead of estimating what the profits are, I'm simply going to use the ones that happen? Exactly. So why is that different? Because you never would do that in any normal valuation. What you would do, occasionally in valuation, you have to go back in time. This isn't the only place in the world that anybody said, I wonder what Google stock was worth, like, back in the day. But when you do that for valuation purposes, the first rule of thumb is to avoid hindsight bias. And so this tax, uniquely, taxes nothing but hindsight bias. It's going back to 1990. Sotomayor, there's an argument about that, because it has two components that you keep ignoring, the flotation value and the time that the company I'd love to talk about those other variables. The flotation value, I mean, it's a tax between the difference between two variables. The reason I'm focusing on the value in profit-making terms is because it's the larger of the two numbers, and the tax falls in the difference between the two, and the flotation value is basically taken as a given. Kagan. I'm sorry. Please. Go ahead. I mean, I could talk about this with you all day.  Let me ask my question. Let me ask my question. Roberts. Justice Kagan, let me pose it. No, Justice Kagan. Okay. Do you agree? I mean, you said we should look to the way this is designed. So let's look to the way that the actual formula is designed. Do you agree that this tax would impose identical tax liability for companies with the same average profits, but could impose very different tax liability for companies with the same total profits? That's the way the thing is designed, is it not? Yes, and that's true of every excess profits tax, Your Honor. What matters for those tax liabilities is the way the thing is designed. Well, that's the question. Is that true of every excess profits tax? Take a hypothetical like this. You have two companies, Company A and Company B, and one company operates over 4 years and makes a lot of money. And one company operates over 1 year and makes only a quarter of that amount of money. Now, a typical excess profits tax is going to take Company A, which has made a lot of money, and it's going to end up paying four times as much tax as Company B, which has made only a quarter of the amount of money. But under this tax, Company A and Company B pay the exact same thing. Isn't that right? No. They would pay different taxes. I mean, they pay the same rate. One year, four years. They'd have the same rate. They'd have the same calculation, but it would affect them very differently. But in other words, a company that has made four times as much profits under this formula could pay the same tax. Isn't that right? I don't think that's true. Because it was operating four times as long. Right. And because there's that D, variable. Right. That's right, but of course the flotation value is going to play a bigger role in the other company. Assuming the flotation value is the same for both companies. Then maybe it could, Justice Kagan, but let me say two things about that. It definitely could. It would have to. And that's because what this is trying to tax is not total profits. This is trying to tax average profits. Or what may be the better way to say it is it's taxing profitability and not profits. No. With all due respect, it's taxing profits above a threshold. And the threshold is determined by flotation value. For most companies that the tax applies, and that is the way you look at the credibility of these taxes, you ignore the outlier. For most of those companies, it's going to be four-ninths of the flotation value. Kagan. The reason why this formula was devised in the way that this formula was devised was specifically to get at the outlier. In other words, it was to get at the company that only operated for a short amount of time, but they wanted that company to pay just as big a tax bill as the company that had operated for a much longer amount of time and had made many more profits. So the end result is that this company that operates for a very short amount of time and makes almost no excess profits pays the exact same tax bill as a company with four times as much excess profits. No, that's not right, Your Honor. It really is not. And what they were trying to do, first of all, the outliers, the reason they included them in is they figured they had to because it fit within their definition of the regulated companies they were trying to catch. Now, they knew they had to, and this is only two companies we're talking about, they knew they had a shorter period. So they knew this would fall differently on them as a substantive matter, no matter how they did it. The reason they didn't care much is because those companies got something that the other companies didn't, which is they got to operate for the next three years in a favorable regulatory environment in which no excess profits tax would be imposed on them. So it may look like they have a higher rate, effective rate under our calculation. They do have a higher effective rate over a relatively small amount over the threshold. But they make that up essentially in the outyears because they make money under the favorable regulatory regime. And again, the theory of this is for four years after flotation, there's a favorable regulatory regime in which they make excess profits. Those two companies get to make money in the outyears, 2, 3, 4, without any excess profits because it was really important for them to make this a one-off tax. But if I can get back to your question, because there is this phenomenon. Scalia, why weren't they subject to a favorable regulatory regime in 2, 3, and 4? They were. But they weren't subject to any tax for it. Because remember, this was very important for labor. They're coming in after 20 years of conservative rule. They don't want to be the old labor party. They don't want to put in a new permanent tax. So they want to do this once. And so that works great for my clients because they were privatized in 1990. But when they're doing this in 1997, they get a couple of outlying companies that were only privatized in 1996. So what they do is they hit them with a reasonably tough tax in year 1, but year 2, 3, and 4, they're in a favorable regulatory environment and they get no tax at all. So, you know, don't cry any tears for them. Now, the point I thought you were going to ask me, though, is even for the companies with the same denominator, it is true that companies with the same profits can be subjected to different taxes. But that's because it's an excess profits tax. And that is what is true of the exact same flotation value can be subject to different taxes. And that's a result of the amount of time. That's a result of the D variable. If you were right, excuse me, if you were right, the D variable wouldn't exist. If this were an excess profits tax, it would have been written without a D variable because they would not have cared whether it was 4 years or 1 year or any place in between. With respect, I disagree, because, first of all, it's only those two companies for what you said could possibly be true. As to the rest of the companies, the reason that they were trying to use D is because they were trying to capture the excess profits during a period in which there was a particular regulatory environment where they thought they earned excess profits. For all of the companies they reached, that period was the D with the exception of the outliers, and the reason it had a different outlier is because they were recently privatized. But if you think about the substance of this tax, it is taxing their term, value and profitmaking terms, but not any abstract profitmaking terms, profits over a reported period. If you were right, it would just be a 52 percent tax on annual profits above one-ninth of flotation value. And it's not that. It's not that specifically in order to get at Railroad Track, which would have paid very little tax under your formula, but instead pays a great amount of tax because they think that Railroad Track got the same good deal at the beginning as all these other companies did. But so even though they didn't make very much in the way of excess profits, they were going to tax them just as much. Because they had three free years in the out years. And if you're looking at how this applies in the normal circumstances of its application, then you don't have the whole analysis turned on Railroad Track. Sotomayor, Mr. Clement, is that you're undermining your own argument. If they're getting three full years at a lesser tax, it's because their flotation value was made more equal by this formula. Clement, and so they don't need to be taxed anymore moving forward because they got it right. Clement, no, with all due respect, that's not right. The flotation value is calculated the same way for each of these companies. And the theory of why the flotation value is too low is the same for all of them, which is under the regulatory policies, they're going to hold the prices firm for a 4-year period, and they're going to increase efficiencies and reduce costs, and they're going to make money. That's supposed to incentivize them, and then that's the base for all the regulatory policies going forward. Breyer, I just wanted to hear what you were going to say in answer to the second part of Justice Sotomayor's earlier question, and to remind you of that, you were going to explain to us, which I felt I needed, the second term, that second term. And that just says FV, fair value. But I did notice that if you make 0.23 times fair value, not quite by coincidence, happens to be what the companies would have made over a period of 2 years, if they were to make 2 years in profit, had it been the truth that the value of such companies was, as valued by the market, 9 times their earnings, because a company that's valued 9 times its earnings earns about 11-point-something percent per year, taking So what this tax does is it takes the profits the firms actually, actually made over 2 years, not quite actually, it assumes twice the value of the first year, you see. So whatever they made the first year, and if it's only 6 months, it's twice 6 months, you know. That first part figures out what they really made over the first year and then multiplies it by 2. And you take that and you subtract from that the amount that they would have made over 2 years. Now, so it looked to me pretty — this helps you, of course, but it also is calculated on an average, the average of the first year's profit. They consider that the average. And therefore, they are right in saying, you know, a firm that was only in business for 6 months will be taxed, the whole 2-year extra will be taken away, even when there was no 2-year extra, you see. So that firm would have paid more than their gross income. Of course, there is no such firm, and that's their problem. But we come to that later. But I want your view, if you can understand, if I've explained it clearly enough so you get where I'm coming from. And if I have explained that clearly enough, I'd really appreciate what you think about it. Well, I think so, but I think I get there in a slightly different way, because I guess I don't see the natural relationship between the 23 percent and the flotation value, but I think I get to a similar place, which is if you think about it the way that we formulate it, it's 51.75 percent of four-ninths of flotation value. Now, the flotation value is calculated based on the initial share price plus the number of shares. And the initial share price for all the utilities, the electrical utilities, was 2 pounds 40 pence. So it's just 2 pounds 40 pence by however many shares there were. Okay. So that's flotation value. The floor for the excess profits is four-ninths of flotation value. Now, if you want to get it on an annualized average basis, and if you want to, you know, this is at 64A of the Petition Appendix when the tax court did that, but what that means in practice is this tax is taxing 51.75 percent of the profits above one-ninth of the flotation value. Breyer, it'll do that for firms that are in business for four years. Yes. Absolutely. It won't do that for a firm that was in business six months. And, and a very different number, indeed, a number that could exceed the money they, all the money they really make in the next two years. That's not true of any company here. Of any company, that's not true. It's not true. There's only one company like that. Absolutely right. But, but, but some, particularly on the other side, want to make quite a lot out of that fact, and they want to make quite a lot out of the fact that for that single, whatever it's called, railroad something and some others. Railtrack, but again, Railtrack did not pay more in taxes than they did in this case. I know. I know. They didn't. It didn't happen in this instance, correct? And, and, and that is a very important fact, because when you're trying to figure out what, and again, their regulation says you look to the application of the statute in the normal circumstances in which it applies. In the normal circumstances in which this applies, and this is the party stipulated to, every company paid less in this excess profits tax or windfall tax than they made in initial period profits. And that is all that really matters. They want to focus on the fact that, well, for a lot of these companies, the base amount was larger than the tax, than their initial period profits. Who cares? I mean, that's just an artificial number. This fact is not true. Sotomayor, let's go back to my initial question. What's the rule? If someone uses your actual profits in any way, it's a credit that they're entitled to? No, I don't think so, because again, Well, I don't know how you get around it, because you seem to be saying to us that no matter how, what formula you create, so long as we can simplify it in math to effect which take any variables in it and fix them in any way, that's a creditable tax. That seems to be what your argument is. No, it's not, Justice Sotomayor. Now, there's two things your question I think got to. One I thought I already dealt with, which is future valuation is not a problem. There's no realization of that. No, I'm saying to you that any tax that relies upon actual profits in any way you say is wrong. And it's not right or wrong. We would say it's creditable if that's its predominant character. So if you want to put that as part of a ten-factor test where past realized profits is one of the ten factors, but you also look at real market valuation and some other factor, then I'm probably going to lose. But in this instance, the only moving factor, the only thing that changes from company to company, other than the flotation value which is fixed, is their profits. And nobody, you know, nobody doubts. Sotomayor, No, the flotation value is not fixed. It was different for each company. They only fixed the percentage that they're going to use, but the actual amount paid was different for every company. But, again, that's classic excess profits tax. So let me try to come at it this way, which is to say, suppose you had a country that had a tax that said we're going to tax your value and we're going to measure your value based on the income you made in the last year or the last two years. Now, I would say that that is clearly a creditable income tax. If they said the same thing, we're going to tax your value and we're going to calculate your value based on your income over the last two years, but we're going to subtract 10 percent of your market cap, that would be an excess profits tax. The market cap would be different for every company, so there would be another thing that was different for each company, and the effective rate might be different, but that's okay because that's how an excessive profits tax works. The last thing I'd say before I go and sit down is that's how the 1917 United States excess profits tax worked. In 1918, when Congress said that foreign excess profits taxes are creditable, surely that's what they had in mind. And this is very similar to that classic prototypical excess profits tax. If I could reserve the remainder of my time. Roberts. Thank you, counsel. Ms. O'Connell. O'Connell. Mr. Chief Justice, and may it please the Court. The windfall tax is not an income tax. It is a tax on an increment of company value. A company's profits multiplied by a price-to-earnings ratio is a typical way of imputing a value on a company. Using profits as one variable in that valuation formula does not transform a tax on company value into an income tax. Scalia. That's a way of estimating future value. I don't know that anybody values a company that is sold on the market by saying how much money did they make in the last two years, and we're going to multiply that by 9. You look at what people were paying in the market. Well, Justice Scalia, what Parliament was trying to do here was to impute a value on the company for which it should have been sold in 1990. And so using a stock price at some later date would not have been an adequate proxy to determine what that value should have been. They know what it really was. I guess they're all billionaires. They've got triple billionaires. I mean, if you could go and figure out what companies could really be sold at as opposed to what the market says, I think I have the solution for you. I don't know why either of us is working here. Well, the point is that Parliament was trying to come up with a value that it should have charged for these companies in 1990. So since there is no real value, I mean, maybe there is, because they did it in the form of an IPO. And the share then went the next day into the market. And when it went the next day into the market, did the market pay a lot more? Yes, it did. Really? There is evidence. All right, then you could use that. You could use that. Well, but if you use it. How does that relate to the number 9? If you use just the profits on the next day, that wouldn't capture all of the efficiencies that were realized over the next day. Yes, yes, but of course, in the past, we are making a prediction about what efficiencies will be realized. And in the future, we know. So the one thing we don't know, since life is risky, or we do know for sure, is whatever it shows up to be in the future couldn't have been the value that shareholders would put on it in the past, because they know life is risky. Well, that is true, and that is one thing that is a leap. The reason that that's relevant here, of course, is this number 9 is a made-up number. It may be made up by great experts, but since they are all not geniuses who own the whole world, they must not be perfect experts. Isn't that true? The number 9, it was not an arbitrary number. No, it was a number picked by whatever company had, what is it, the lowest price earnings ratio or something like that. Okay. But that doesn't mean whatever company that the shareholders thought would deviate the least from whatever the return was, and that doesn't apply to the others. But you don't want a lecture from me on this subject. What I want is an answer from you. And the answer I want from you is this. As I read it and once understand that this number is a semi-made-up number, I did look at that second term, and I thought that 0.23 times 9 is about 2 years' worth, about 2 years' worth of profits that would be expected, all things left out of it except profit. And so then once I saw that, I looked at the first term, and the first term seemed to me to be their actual profit, their actual profit on an annual basis multiplied by about the same number, you see. And so what we do is we take about multiplied, you see. So we take about 2 years' worth of profit that they actually made, and we subtract from that 2 years' worth that our experts tell us they should have made as the basis of the original market price. The rest is excess profit, and we seize all of it for 2 years only. And by the way, if a company had only 6 months' worth, well, then, you know, they might really be hurt, because after all, they only earned 6 months at the annual rate that showed something, and maybe they didn't really earn it over the next 18 months. But the reply was there was no such company. And of course, because time periods vary, rates will vary. But I don't know that that matters for an income tax. It's not a question of the rate. It's a question on what you impose it, and you impose it on income, because, as he says, there are two choices here. The number is really calculated on the basis of income, and there is another number going on, the actual flotation value, and this third thing, which is called the number 9. But primarily, it is the income that makes the difference. Now, that's his argument. What's your response? That's his argument, as I understand it. I don't want to put words in his mouth. But you explain it to me. Justice Breyer, I think the problem with when we start to reformulate what this tax is or is not taxing or what the amount of the actual tax is just shows the danger of trying to reformulate what Parliament actually did in trying to determine if it's an income tax. As the Professor's amicus brief points out, if you reformulated this into an average annual profit or left the P over 4 as it was and then divided everything else by 9, this would become a 207 percent tax. But I said, so what? Now, you can answer that by saying, no, it's not so what. I mean, isn't an income tax dependent upon whether it's a tax on income, not the rate? And whether some companies pay a high rate and others pay a low rate, even if that's totally arbitrary, wouldn't make a definition to the characterization. In that characterization. As long as you're not taxing, they actually have the gross income from which this comes. In that characterization, Justice Breyer, the 207 percent of average annual profits over one-ninth of flotation value, then no, it's not an income tax. And the rate does matter because it's completely confiscatory. No, no. Well, wait, wait, wait. It is greater than the profit they earned during the year. But it is not greater than the profit that they earned during the two years or whatever the period is that everybody's paying this on. Right. Is that right? It's true. So here, by good luck for them or bad luck for you or whatever it is, they have not taxed more than the gross income of the companies. Is that correct? They have not taxed more than the total profits over a four-year period. Four-year period. Which is a. Well, well, well, is it not going to be an income tax if what the U.S. government says, though it hasn't said it, it could say, we want, we want 35 percent of what you earn over 6 years. Okay. That's what we want. Now, that's still an income tax, isn't it? Well, the U.S. income tax, what the regulation looks for is taxes that have the essential features of the U.S. income tax. And, no, the U.S. income tax has never been imposed on a multiple of profits. It's imposed as a percentage. So you say whatever, if they impose it on more than a year, any company, any country that calculates the income tax over a period for more than a year is outside the tax treaty because it's essential to the nature of the American income tax system that it be calculated year by year. You're hesitating to say that, but I think you're right. Yeah, I am, I am. I think if there was a country that imposed an income tax every 6 years and said every 6th year you'll pay an income tax over the last 6 years, then that would probably still be an income tax. But the point is that here, that's not anything close to what they're doing. What Parliament has done, Parliament's taken a valuation formula where it takes an actual earnings figure from the company, an average annual earnings figure, and multiplies it by a price-to-earnings ratio to impute a value on the company. It then subtracts out what it actually received for the company, which we think shows that the substance of this tax is that it's a tax on an increment of company value. Parliament is calculating what it should have sold the company for, subtracting out what it actually received. Let me just in one way just to fit. Roberts, I'm sorry. We had a lot of questions, your friend had a lot of questions on the different periods, the initial periods and changing the D value and what that did to the consequence. That is not an argument that you've made, is it? That's right. I think we generally agree with the Petitioner that a tax is either an income tax or not an income tax for everybody that's subject to the tax and that you look at it in the normal circumstances in which it applies. But I do completely agree that the fact that the D figure changes makes this, just reinforces the idea that the substance of this tax. But that is, again, that's not an argument you've made. No, but our amicus did make it. I mean, the amicus did, but I don't think we should do a better job of getting money from people than the IRS does. Well, the point is that the fact that there's a D variable there shows that what a company would do to create a value for it, it's not similar to an excess profits tax in that way, that where a company that operated for only 6 months is paying the tax at the same level that a company would be that was making profits at the same rate for the entire 4-year period. No, that's a good articulation of the argument you haven't made. So you are accepting the position the government made in PPL v. Exxon. You're not disavowing the position you took there. Right. That it depends on the normal circumstances in which it applied. But I mean you're not saying that the amicus brief is wrong. The Chief Justice is, of course, right. The amicus brief is the amicus brief, and the amicus brief develops this argument, which I think is the right argument. But you're not saying that's wrong. It's not wrong. We think that both the D variable and the flotation value variable add extra support for the idea that this is a tax on an increment of company value. The D shows that it's trying to impute an annual earnings figure on each company. The flotation value shows that it's not concerned just with how profitable any particular company is, but with how profitable it is in relation to what the U.K. government received for it as value when it floated the company. I thought you were saying that that argument was wrong because you look to the predominant character of the tax and that it's either a tax or it's not. It wouldn't be an income tax on the vast majority of the companies where it was a tax that was the same and not on the companies where it was a large value or the other way around. You look at the predominant characteristic and you decide whether it's a tax or not on that basis. That's right. But I'm not saying that the argument the amicus are making is wrong. We're just saying that's not an income tax for anybody because in fact this doesn't tax anybody's income. It taxes annual profits – excuse me, it taxes average profits, not total profits. It taxes profitability as a mechanism to tax value. That particular aspect of the amicus brief that says if it's bad for one, it's bad for all, yes, that is not our position. If it – it is not our position that you look at the tax based on the normal circumstances in which it applies. So I think we are in general agreement with PPL that if there are outliers where net gain would be totally confiscated, you look at it in the normal circumstances in which it applies. That's what the regulation says. Well, now I'm totally confused, because this outlier is an outlier not because the tax hasn't worked. It's an outlier that the tax is designed to get at, that this formula has – was developed with this D variable in order to make sure that outliers, meaning people, companies that operated for only a short amount of time, would still pay a significant tax bill. So the whole design of this tax was to get at the outlier. That seems to me to suggest that the predominant character of the tax is not an income tax, but is instead a value tax. Well, I mean, you could also get to that by saying that the predominant character of this tax is not an income tax because of the way that it applies to everybody else. I think that's our principal argument. If there were some outlying companies for which this didn't look like an income tax, I think the regulation allows some flexibility there, where it says we look at it in the normal circumstances in which it applies. And if that makes it an income tax, then it's an income tax for everybody. I think an important point here is that the Petitioners have conceded that if Parliament had chosen a different valuation method, like the stock price for any particular company, and then subtracted out the flotation value, that that would not be a tax on income, that that would be a value tax. The fact that Parliament chose a different way to place a value on each company shouldn't become a tax on income just because profits is one variable in that tax equation. That would open up many foreign taxes that just use this typical earnings times a price-to-earnings ratio for an income tax credit, a dollar-for-dollar credit in the United States, just because the tax was written that way. We think what Parliament was doing here was clearly trying to impute a value on each company and then subtracting out what it actually received. In substance, it's a tax on value as well as in form. If the Court thinks that both of the formulas are equivalent, the tax that Parliament actually wrote and the rewritten tax of 51.75 percent of your 4 years of profits over four-ninths of the flotation value, then there's a couple of reasons that you should go with the tax that Parliament actually wrote. The first is that exemptions from taxation are construed narrowly, and a business of foreign income tax that is paid to a foreign or, I'm sorry, a foreign tax that's paid to a foreign government that is not an income tax is usually just treated as a deduction. And the IRS has said throughout this case that it's perfectly happy to treat this windfall tax as a deduction. It just would not get a dollar-for-dollar credit. Breyer, on that, on the question of how to treat it, I — there isn't authority. But, I mean, if I'm quite honest about how I think about it, I think the people on the tax court actually usually know more about it than the judges who are not on the tax court. And so when I get an opinion and the tax court all thinks one thing, and then the court of appeals is thinking something else, and it's highly technical, I tend to be tempted to say, well, the tax courts deserve something. Now, is there anything really in — am I just doing that wrong if I do that? Justice Breyer, with due respect to the tax court, the tax court didn't even analyze any of the three regulatory tests that are set forth in the regulation. I don't think that's the case. Ginsburg. I thought you would answer that, that the Commissioner gets some credit, too. This is the Commission's — this is the Treasury regulation. So one question is, do we owe that regulation any kind of a — any kind of deference? Yes. I think to the extent that there's any ambiguity about what the regulation means, then the Commissioner's interpretation of his own regulation is entitled to some order of deference along the lines of our. And I'll — Roberts. But there's no difference between what the Commissioner says the regulation means and what it says. That's true. It doesn't seem to move the ball much one way or the other. That's true, unless you accept Petitioner's argument that what the regulation means when it says you evaluate the tax based on its predominant character is that that means you can rewrite the tax before you start testing it against the three regulatory requirements, and in which case this would be a 51.75 percent tax on 4 years of profits that you're testing against the three regulatory requirements, in which case, yes, it would probably be an income tax. But that's not how the Commissioner views the regulation. The Commissioner views that predominant character test as so long as the tax is predominantly one where you — it's on realized income and it's calculated by starting with gross receipts and subtracting out costs and expenses, there can be minor nonconforming elements in the tax base, like the inclusion of imputed rental income that's not actually earned by a taxpayer, which some countries include in an income tax, and the tax could still be creditable. The predominant character does not mean — the predominant character test does not mean that you completely rewrite the statutory tax base before you test it against those three regulatory requirements. Roberts What if you — go ahead. What if they impose this, what you would call the valuation tax, every year, and it was based the same way, it's based on profits that year, saying we're going to say we think the value of this company is now this much because they made, whatever, $20 million last year, and so we impose this set tax. The next year, we think its value is this because they made, you know, 10 million, so we're going to impose this tax. I think that would not be an income tax, because they're using a valuation formula that's imputing a value on the company and then taxing the value. They solely — they're based solely on the amount of income. Well, if that — if that were the only characteristic, then I think a property tax that's calculated that way could become an income tax, and that's not what the income tax credit, the foreign tax credit, is designed to do. How could a property tax calculated that way, in other words, based on income from the property? Times a price-to-earnings ratio. If what you're saying is that the tax that the foreign government is imposing is just a tax based on last year's income and they're calling it a property tax or something like that, I think that's what Petitioner was giving as an example, that, I think, would be an income tax. If the only variable in the tax base was profits, yes. If they were to say we're going to multiply it by a price-earnings ratio. Yes. Based on how much you earned. Yes. Which sounds like income. No. That sounds like value. And that's another thing that I'm not sure. Well, the how much you earned part sounds like income. Yes. But any valuation formula will use some known data from the company to determine the company's value. So if you're — if you're just — if you're applying just to a company, say that the United States was imposing a property tax on corporations and it decided to calculate the value of the corporation by taking its last year's earnings times a price-to-earnings ratio, that could be reformulated to look like a tax on the company's last year's income. But the reformulation, think of that first term, put it in your mind. Now, that first term does have a number, 0.23, and let's do times 9, which is that valuation business, and what you get is a little over 2, okay? And you're going to get that every time. That's not going to vary from company to company. That varies as long as the universe is here. So we know we're going to multiply 0.2 — rather, 2-point-something times that first part of the first term. And that first part of the first term consists of nothing other than, for the 4-year company, the average 1-year profit. So the — what you're telling people to do in that first term is simply multiply by a little over than 2, a little more than 2, the average profit earned over a 4-year period. That's what it says. So there's nothing there but income. It's average income, I grant you, but there's nothing there but income. And then what you subtract from that, what you subtract from that is a quarter, is a quarter of the value I grant you. But it's a hypothetical value used with the number 9 of what one-quarter of the value of the flotation price taken in. So there's an aspect to it that does have, unless you do it the way I was doing it initially, there is an aspect to it that does concern at least a hypothetical value. But the heart of the equation in determining this so-called present value is nothing other than taking average income over the 4-year period. Now, if I'm right, am I right about that? No. If you're — first of all, if the first part of the equation is profits multiplied by 2, then no. That is not equivalent to the first part. No, no. It is the very first part of the first part is the profits, the average profit over the 4-year period. It says P. And then P, well, they have this day business. That's just times 365, because they want to annualize it. So if you have a 4-year, what you're going to have is you'll have 365 times, and then it's going to wipe out and you'll have divided by 4. So you'll take the total profit over the 4-year period and you'll divide it by 4. That gives you the annual profit. So now we finish the first half of the first part. And the second half — and we're going to take .23 of that, okay? Oh, no, we're not going to take any yet. Taking .23 is just going to — you're going to take .23 of the number 9, and that leaves you with the 2. That brings you to the little over 2.2. So what we're doing is taking the average annual profit over a 4-year period, we average it, and then we multiply it by 2-point-something, okay? And what that's doing — and then what that is doing is giving you, since it's average annual, 2 years' worth of average annual. And from that, we subtract a quarter of what they received in the initial price, which happens to be what the market, if it really was 9, about was expecting them to earn during a 2-year period. That's why I put in the last part. But even if I'm wrong about that, I'm right about the first half, aren't I? Well, and I think what you're — the one point of this that's missing is that if you're going to multiply the other parts by 2, you also have to multiply the tax rate by 2. And if this is — That's why I said 50 percent. No, no. It would be — it would be 100-and-some percent. It would be twice the 51-point-something percent. That rate could be a problem for somebody at some time in some place. It would be a problem. It would be a problem here, because all of these companies but one did have and did fit within the 4-year category. So as to all these companies but one, it did not exceed gross income, it did not exceed net income, it was 50 — the number that he arrived at. Well, Justice Breyer, in your — in your reconstructed formula, the tax rate is going to be twice the 51-point-75 percent. And that's — It is. And more — yes, because you have — if you're dividing — For one year, you have me calculate it on the basis of one year, but it's 50 percent of two years, isn't it? Or — sorry, I'm now confused enough that I won't follow. It's 50 percent for all four years. For one year, it's 207 percent. It's 51-point-75 percent for all four years. All right. I've said enough that my law clerks will have picked this up. They will have written it down, and I'll be able to go back with the transcript and study it, which I'll do. And, Justice Breyer, I just — I want to address for a minute this — this issue that it wasn't confiscatory of any particular taxpayer's net gain. That's not the relevant question, and I know there's some discussion about this in the briefs, but if all you were to do were to compare the final tax bill to the company's net profits over the year, there's a lot of things that are not income taxes that would then become income taxes, like an excise tax that's charged on the number or the number of products that are manufactured or sold in a particular company in any given year. So long as it leaves the taxpayer with a nickel, then that's an income tax. That's not what the income tax means. What matters is what the tax base is. That's how you determine if it's a tax on income. The realization test requires that, because you can't impose a tax on income that the taxpayer hasn't actually realized, and the gross receipts and the net income test also require it. Ms. O'Connell, if the Court should go the way the Fifth Circuit went, the way the tax court went, could the regulation be changed so it wouldn't happen again? If so, then I think it should be changed, and I don't know exactly how that would look, but maybe it could make it more clear that you're supposed to just look at the tax base. I think the regulation does say that, but, yes, I think there would be room for the IRS to make the regulation even more clear than it already is if this Court were to conclude that the windfall tax is an income tax. Why shouldn't it be changed? I mean, why should companies, American companies doing business abroad in borderline cases have to pay tax on the same income twice? Well, Justice Breyer, they're not. SWEB, the subsidiary of Petitioner, paid the British income tax in the same years that it paid this windfall tax in 1997 and 1998. And Petitioner got a dollar-for-dollar foreign tax credit for its portion of that British income tax that was paid in those years. For any other tax that's imposed by a foreign government that's not the income tax or that's not an excess profits tax or a war profits tax, the company can get a tax deduction. That's how profits or other taxes are normally treated. You deduct from the amount of income that you're reporting to the IRS the dollars that you paid toward that foreign tax, and the value of that deduction depends on the marginal tax rate that the taxpayer is paying. So you might get 35 cents on the dollar for every dollar that you can subtract from your income tax base. But the dollar-for-dollar credit in Section 901 is reserved for foreign taxes that have the equivalent features of the U.S. income tax, and the windfall tax simply doesn't. It's written as a valuation formula, and it's not just written that way, but that's the substance of what it's trying to do. It's imputing a value on each company for what the U.K. government should have charged, and it's subtracting out the amount of money that it actually received. And I think that's an important point to keep in mind when determining what is the substance of this tax, is that the U.K. government is not just going out into the world and taxing companies that it thinks are particularly profitable to try to get more money. The U.K. government used to own these companies, and it sold them at too low a price, and the windfall tax is an effort to get back some of that value that it should have asked for when it sold them. Whether that's a good idea or a bad idea, it's not an income tax in the U.S. sense, and it should not be entitled to a credit under Section 901. Thank you. Roberts. Thank you, counsel. Mr. Clement, you have four minutes remaining. Clement. Thank you. Just a few quick points in rebuttal. First of all, just for the record, if what they really wanted to do in the British government was to tax value as we normally understood it, there was a ready mechanism available, the London Stock Exchange price. Now, they want to say, well, but we wanted to go back and value it in 1990. But as alluded to, they could have done that because on day one, there was about a 20 percent pop, to use the IPO word, there was about a 20 percent pop in value at the end of the first day's trading. They could have taxed that. If they wanted to be a little less precise but capture a little more value, they could have gone 30 days out or 60 days out on the theory that it took a while for the information to make it into the market. That would have been a value tax. I wouldn't be here arguing that it's credible. But what they did was something very different. They used a sui generis, very unique concept of value, not value unmodified, but value in profitmaking terms. And not profitmaking terms in some abstract sense that takes into account future income streams, but profitmaking terms as measured by four years of reported profits that satisfy every test of the regulation. They are realized profits, they are based on gross receipts, and they reflect exactly, to the penny to the pence, the net income. That's what they based this tax on.  Kagan. Kagan. I mean, what do you think is the answer? Suppose that the labor government had come in, not after 4 years, but after 2 years. If they had looked at those two years of profits, they said, that's enough for us to know that these companies were grossly undervalued, and they had done this exact same formula, and the result is that they would have ended up with a tax rate of over 100 percent. Would that have been creditable or not? I would be here with a more difficult case, Justice Kagan. I would love to argue that that is still creditable, because I think you could live in a country that has an income tax, especially an excess profits tax on a few disfavored industries, that has a rate over 100 percent. But I would run into a regulatory hurdle, and if I had had that case, I would have had to challenge the regulation. I would have loved to do it. Kagan. I guess what the hypothetical suggests is that in some respects, the fact that you now — that you have a tax rate here of between 0 and 1 is a bit of a fluke. You know, if they had come in a little bit earlier and done the exact same thing, based on their understanding of how profitable these companies were, which they would have seen after 2 years, you wouldn't have been able to make the same argument. Can I just say, though, it wouldn't have been a fluke, because one of the things that the people that constructed this tax wanted out of this tax is they wanted an aid. So it's not a fluke that they didn't impose a huge tax in excess of initial period profits on any company, because they wanted to make sure the incidence of this tax was on companies that could actually pay it. And if you do that based on 4 years of reported profits, you're pretty sure that people are going to be able to pay it. I would like to bring back to the concession, I think, that ultimately was made by the government has a tax on value, but the only measure of value is the past year's reported income, that that would be a creditable income tax. Well, I don't think it changes if you multiply it by 9. I don't think it changes if you divide it by 4. I don't think if there's one company that you divide it by 1-4 instead of 4, any of that changes the analysis. Nor does it change the analysis if you subtract out some figure that represents a market cap or an initial flotation value. That would make it an excess profits tax rather than a simple income tax, and that is what the British government did. I'll just close by bringing you back 75 years to the Biddle case. In the Biddle case, there was an argument about a British tax and whether we should follow the form of the tax or the substance of the tax. This Court said that we, of course, in looking at a foreign tax, don't bind ourselves by foreign classifications or characterizations. We look to the substance of the tax. In the Biddle case, the rule that you look to substance, not form, benefited the Commissioner. There is no reason for a different rule when the shoe is on the other foot. Thank you. Roberts. Thank you, counsel. Counsel. The case is submitted.